**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 14-40138-01-DDC** |
| | |
| **AHMAD SALIM SALTI (01),** | |
| **Defendant.** | |

**MEMORANDUM AND ORDER**

This case's current controversy arises from a post-judgment motion filed by the United States.  This motion, called a "Motion . . . for an Order Directing the Application of Restitution Payments Paid by Defendant Ahmad Salim Salti" (Doc. 70), asks the court to direct the Clerk to do three things:  (1) account for restitution payments by defendant Salti and his codefendant for the joint and several judgment separately, so that each defendant is "liable for the full amount of his judgment unless and until" the victim's loss "has been repaid in full;" (2) apply Mr. Salti's payment of $7,827.38 in August 2020 to his restitution judgment so that it is paid in full; and (3) disburse the full amount of that payment to the lone victim of his crime (or whatever portion of this payment that is not yet disbursed).  *Id*. at 10.[1]

While the government's requests sound complicated, they actually present a single straightforward question.  Namely, is Mr. Salti legally entitled to receive credit against his restitution debt for a portion of the restitution payments paid by his codefendant, Pattrick

---

[1]    The court appointed counsel to represent Mr. Salti's interests in this dispute and he filed a Response to the government's motion (Doc. 74).  The government filed a Reply (Doc. 75) and the Federal Public Defender (FPD) for our district filed an Amicus Brief (Doc. 81) explaining her views about the issue.  Also, the court conducted an evidentiary hearing on August 19, 2021 (Doc. 78).

Towner?  The court concludes he is not, and it thus grants most of the relief the government

seeks.  Below, the court summarizes the pertinent facts and then explains the reasons for its

holding.

### Procedural History and Pertinent Facts

The court entered Judgment against Mr. Salti on March 21, 2016.  Doc. 67.  Based on his

guilty plea, the Judgment adjudicated Mr. Salti as guilty of Conspiracy to Commit Robbery, a

violation of 18 U.S.C. §§ 1951(a) and 371.  *Id*. at 1.  The court sentenced Mr. Salti to prison,

imposed a term of supervised release, and ordered him to pay restitution of $35,000.  *Id*. at 2, 3,

& 5.  The Judgment found that the lone victim of Mr. Salti's crime—TZ/JR Enterprises—had

sustained a total loss of $72,000.  *Id*. at 5.  The Judgment also provided "Special Instructions"

and established that Mr. Salti owed his restitution debt on a joint and several basis with Pattrick

J. Towner, a defendant indicted in a separate case in our district.  *See id*. at 6 (cross-referencing

*United States v. Towner*, No. 14-40112).

Though indicted and convicted separately, Mr. Towner committed the robbery that he

and Mr. Salti had conspired to commit.[2]  The court entered its Judgment against Mr. Towner

about six weeks after it entered Judgment against Mr. Salti.  Judgment, *United States v. Towner*,

No. 14-40112 (D. Kan. May 5, 2016), ECF No. 43.  This Judgment adjudicated Mr. Towner as

guilty of Interference with Commerce by Means of Robbery, a violation of 18 U.S.C. § 1951(a).

*Id*.  It also committed Mr. Towner to a term in prison, imposed a term of supervised release, and

---

[2]     Mr. Towner's crime consisted of robbing a service provider who came to a convenience store owned by Mr. Salti's father.  The provider intended to service an ATM machine located in the store.  Mr. Salti worked in the store as a clerk.  Mr. Salti informed Mr. Towner about the service provider's schedule and the two planned to rob him of substantial cash stored in his service van.  Mr. Towner used a semi-automatic handgun in the robbery and the service provider tried to take the gun from Mr. Towner during the robbery.  The two men struggled with one another over control of the firearm.  Mr. Towner prevailed, and he completed the robbery.  Mr. Towner's fracas with the service provider ended as well as possible.  No one sustained a serious injury, but the struggle easily might have cost the service provider or Mr. Towner his life.

ordered him to pay restitution in the amount of $72,000 to the same victim—TZ/JR Enterprises—as Mr. Salti. *Id*. at 2, 3, & 5. This Judgment also found that this common victim had sustained the same loss identified in Mr. Salti's Judgment—$72,000. *Id*. at 5. Finally, the court made Mr. Towner's restitution debt an obligation he owed jointly and severally with Mr. Salti. *Id*. at 5–6.

As alluded earlier, the current dispute arises from a disagreement about the status of Mr. Salti's restitution obligation. Namely, Mr. Salti and the Clerk of our court contend that Mr. Salti has overpaid his restitution obligation by $2,487. He should receive a refund check, they say. In contrast, the government contends that Mr. Salti hasn't paid too much at all and, instead, asks the court to direct the Clerk to disburse his alleged overpayment to the crime's victim. In the government's view of the law, the purported overpayment is just an accounting illusion created by the way the Clerk accounted for the two defendants' payments against their restitution debts. The FPD agrees with the government's outcome, though her reasoning differs somewhat.

The evidence about the defendant's payment history is extensive and detailed. It is not disputed. *See* Clerk's Exs. 3 & 4 (printouts showing payment and disbursement histories for both defendants based on data maintained in the Clerk's accounting system).[3] In general terms, Clerk's Exhibit 4 shows that Mr. Salti began making restitution payments in March 2016 and made his last payment ($7,827) on August 31, 2020. The fate of part of his last payment, *i.e.*, $2,487 out of $7,827, is the disputed amount.

---

[3]    The data captured in Clerk's Exhibits 3 and 4 comes from the Judiciary Integrated Financial Management System—JIFMS—and the "CCAM Module" within that system. As Jeffery Breon explained in his testimony, JIFMS is a computer system provided by the Administrative Office of the United States Courts. Clerks in the various judicial districts around the country use JIFMS. Mr. Breon, who functions as the CFO for the Clerk's office, ably explained how the Clerk's accounting staff uses JIFMS. Highly summarized, they use the system to track appropriate credits and debits against individual restitution debts, and to disburse payments to identified victims of crimes.

The root cause of this dispute stems from the way the Clerk accounted for payments made by Mr. Towner, Mr. Salti's coconspirator and fellow defendant.  As pertinent here, Mr. Towner has made five restitution payments.  *See* Clerk's Ex. 4 (showing restitution payments on 4/1/2019, 6/24/2019, 8/14/2019, 3/12/2020 & 6/17/2020).  As Mr. Breon's testimony explained, the Clerk's financial personnel divided each of those five payments into two parts.  The Clerk then applied one part of each payment against Mr. Towner's restitution debt and applied the other part against the restitution obligation that he and Mr. Salti jointly owed.

Specifically, the Clerk viewed the two Judgments to establish:  (a) one $35,000 restitution obligation owed jointly and severally by both defendants; and (b) one $37,000 restitution obligation owed solely by Mr. Towner.  The Clerk also interpreted the two Judgments to direct the Clerk to use the relative proportions of these two restitution obligations—35/72 (48.61%) and 37/72 (51.39%)—to split Mr. Towner's payments between his two restitution debts.  So, for example, when Mr. Towner paid $100 toward restitution on June 24, 2019, the Clerk applied $48.61 of that payment to the restitution he owed jointly and severally with Mr. Salti.  The Clerk then applied the remainder of Mr. Towner's $100 payment—$51.39—to the $37,000 restitution debt that only Mr. Towner owed.  Because the Clerk divided all five of Mr. Towner's five restitution payments in this same proportion—48.61% applied to the joint restitution debt and 51.39% applied to Mr. Towner's individual debt—the Clerk's allocations, in effect, reduced the amount of restitution owed by Mr. Salti.  To be precise, the Clerk's allocation of Mr. Towner's five restitution payments, added together, reduced Mr. Salti's restitution debts by $2,487 based on this math:

| Date | Amount Paid by Mr. Towner | Amount Allocated by Clerk to Joint $35,000 Debt |
|------|---------------------------|------------------------------------------------|
| 4/1/2019 | $20.00 | $9.72 |
| 6/24/2019 | 100.00 | 48.61 |
| 8/14/2019 | 100.00 | 48.61 |
| 3/12/2020 | 4,797.92 | 2,332.32 |
| 6/17/2020 | 100.00 | 48.61 |
| | **$5,117.92** | **$2,487.87** |

The data summarized in this chart comes from Clerk's Ex. 3 (printout of JIFMS data for Mr. Towner) and Clerk's Ex. 4 (same for Mr. Salti).[4]

After the Clerk had accrued the five credits derived from Mr. Towner's five payments, Mr. Salti made two more restitution payment—one in July and one in August of 2020.  *See* Clerk's Ex. 4 at 5 (showing payments by Mr. Salti of $6,000 (7/21/2020) and $5,339.51 (8/31/2020)).  The last of these two payments produced—in the Clerk's view—the "OVERPAYMENT" of Mr. Salti's restitution obligation.  *See id*.  It is the fate of this $2,487 that's disputed now.  Should Mr. Salti receive a refund equal to that purported overpayment or, instead, should the victim of his crime receive it?

## *Analysis*

### A.  Restitution in the Multiple Defendant Setting

Federal courts lack any inherent power to order convicted defendants to pay restitution to victims of their crimes.  Instead, "they may only do as authorized by statute."  *United States v. Gordon*, 480 F.3d 1205, 1210 (10th Cir. 2007).  Congress granted such authority in both the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, and the Mandatory Victims'

---

[4]    The court is mindful that Mr. Towner made a sixth restitution payment on June 2, 2021, but the Clerk didn't allocate any of that payment to the $35,000 joint and several obligation.  No one explained why but the court infers that the Clerk didn't allocate any of this sixth payment because, in the Clerk's view, Mr. Salti had satisfied his restitution obligation by then.

Restoration Act (MVRA), 18 U.S.C. § 3663A.  *See generally United States v. Serawop*, 505 F.3d

1112, 1117 (10th Cir. 2007) (discussing history of and differences between the two acts).[5]

Complementary to these restitution powers, Congress has conferred specific rights on

crime victims.  *See* 18 U.S.C. § 3771(a).  These rights include a "right to full and timely

restitution as provided in law."  § 3771(a)(6).

When more than one defendant has contributed to a victim's loss, a sentencing court has

three restitution options.  *One*, it "may make each defendant liable for payment of the full

amount of restitution . . . ."  § 3664(h).  This kind of shared restitution liability is known as joint

and several liability.  *United States v. Sheets*, 814 F.3d 256, 260 (5th Cir. 2016).  *Two*, the court

"may apportion liability among the defendants to reflect the level of contribution to the victim's

loss and economic circumstances of each defendant."  *Sheets*, 814 F.3d at 260 (citing § 3664(h)).

*Three*, sentencing courts possess discretion to blend these two forms of restitution.  That is, the

court may find that multiple defendants are liable for restitution but in different amounts.  *Sheets*,

814 F.3d at 260; *United States v. Scott*, 270 F.3d 30, 53 (1st Cir. 2001) (explaining this kind of

obligation is not "true joint and several liability" but instead is "a creature of the restitution

statute").  The Fifth Circuit has dubbed this form of blended restitution as the "hybrid approach."

*Sheets*, 814 F.3d at 260.

Hybrid restitution uses "a combination of the apportionment of liability approach while

concurrently making all of the defendants jointly and severally liable."  *Id*. (citing cases using

hybrid approach); *see also Scott*, 270 F.3d 30, 52–53 (concluding district court properly could

"impose joint liability on multiple defendants" for restitution "in different amounts," but "a

victim still may not recover an amount greater than the loss").  The parties have cited no cases

---

[5]     The government and FPD disagree whether Mr. Salti's restitution debt was imposed under the VWPA or the MVRA.  *See* Doc. 81 at 4 n.2.  But the FPD concedes that this disagreement doesn't "affect the analysis" of the current dispute.  *Id*.

from our Circuit discussing hybrid restitution.  But the Fifth Circuit discussed it at great length in *Sheets*.

In that case, American Commercial Colleges, Inc. (ACC) "continuously misrepresented" its compliance with regulations issued by the United States Department of Education.  *Sheets*, 814 F.3d at 258.  ACC's misrepresentations permitted it to maintain eligibility to receive Federal Student Aid funds in five calendar years.  The government prosecuted ACC and several of its leaders for these misrepresentations.  ACC was convicted and its sentence included a restitution obligation of $972,794.  *Id*. at 257–58.  Sheets, ACC's President, was convicted in a separate case for misprision of felony because he had concealed his knowledge of ACC's misrepresentations.  *Id*. at 257.  Sheets's sentence required him to pay $972,794 in restitution.  And in related but separate cases, the court imposed sentences on five other individuals affiliated with ACC.  Each of their sentences included a restitution obligation but for lesser amounts than the obligations imposed on ACC and Sheets.  Finally, the court ordered each defendant to pay its restitution debt jointly and severally, with the other six defendants.  *Id*. at 258.

Acting to recover restitution, the government sought a writ of garnishment for nonexempt property belonging to Sheets and two of his codefendants—Otto and Reed.  The district court ordered writs of garnishment to issue and recover:  (a) $957,257 from Sheets's investment accounts; and (b) $50,969 from each of codefendants Otto and Reed's retirement funds.  *Id*.  Though it is not entirely clear, the $50,969 figure appears to represent the unsatisfied amount of Otto and Reed's restitution obligations.  Then, the government filed a motion asking the court to confirm that restitution payments "would not end until either a defendant [had] paid to the upper limit of the [restitution] liability established by the court or the [victim] was fully compensated."  *Id*. at 258–59.  The court granted this motion but, because four of the individual defendants

already had satisfied their restitution debts, the court also ruled that "any receipts from garnishment in [codefendant Otto's case] would be applied to satisfy Otto's fine ($5,000), and then applied toward the joint and several restitution imposed on ACC ($972,794.70)." *Id*. at 258–59.  This ruling meant that Otto's "payment would therefore not count as overpayment and would help to diminish any remaining payment required by Sheets and ACC['s]" restitution debts. *Id*. at 259.  Then, a few weeks later, the district court changed its mind.  Acting on its own initiative, the court vacated its earlier Order and denied the government's motion instead.  The court thus ordered return of the garnished funds to Otto's garnishee.  *Id*.  A third Order—issued only in the case against codefendant Otto—ordered any garnished funds held for Otto's benefit exceeding the amount he owed on his fine "were to be returned to the garnishee" and not "applied to the overall restitution sum remaining for all defendants."  *Id*.  Sheets appealed this third Order.

On appeal, the Fifth Circuit framed the issue this way:  "[W]hether the district court erred in denying the Government's Restitution Motion, thereby failing to apply the restitution sum garnished from Otto against the total loss suffered by the DOE."  *Id*.  The court of appeals held the district court had erred and reversed the Order denying the government's restitution motion.  The Circuit's analysis of this issue consists of four salient parts.

*First*, the Fifth Circuit assessed the restitution orders.  It concluded that they used the hybrid approach to restitution because they "employ[ed] a combination of the apportionment of liability approach while concurrently making all of the defendants jointly and severally liable." *Id*. at 260.

*Second*, the court of appeals concluded that this hybrid approach was a "more appropriate mechanism" to apply "where multiple defendants are held liable for injuries caused by a

common scheme." *Id.*  In so concluding, the Fifth Circuit relied on the First Circuit's decision in *United States v. Scott*, 270 F.3d 30, 52–53 (1st Cir. 2001).  Drawing heavily from *Scott*, the Fifth Circuit also concluded that the MVRA "permits the Government to hold any individual defendant liable for as much as the court ordered as to that defendant, but the government may not collect more from all defendants together then will make the victim whole."  *Sheets*, 814 F.3d at 261, (citing *Scott*, 270 F.3d at 52).

*Third*, *Sheets* rejected the concern which had caused the district court to reject the government's motion, calling it "misplaced."  814 F.3d at 262.  Namely, the district court had expressed concerns that requiring payment from defendant Otto (in addition to funds collected from his codefendant, Reed) would render both individuals "responsible for restitution in excess of the loss attributable to their conduct . . . ."  *Id*.  The court of appeals explained that the victim—the Department of Education—had not fully recovered its loss and Otto's payments had not "'eclipse[d] the ceiling for his own restitution amount,'" which meant that "Otto's obligation to repay has not lapsed."  *Id*. (quoting *United States v. Osborne*, No. 1:06-CR-00006-R, 2010 WL 4788169, *2 (W.D. Ky. Nov. 17, 2010)).

*Last*, the Fifth Circuit reasoned that the "district court's analysis similarly does not align with the MVRA's rules regarding liability apportionment."  814 F.3d at 262.  Consistent with *Scott*, the Fifth Circuit opined that the district court's approach "would preclude the Government from apportioning liability using the hybrid approach while concurrently making all of the defendants jointly and severally liable—an approach which multiple circuits have previously upheld."  *Id*. (citing *Scott* and cases from Second, Third, Sixth, and Seventh Circuits).  The Fifth Circuit concluded with this observation.

> Ensuring that restitution payments from all defendants contribute toward the
> victim's overall recovery is a simple and uniform means to have victims receive

full and timely restitution as provided by law and otherwise ensure that decisions of our district courts align with the purpose of the MVRA.

*Id*.

In sum, the Fifth Circuit defined rules governing restitution orders imposed on multiple related defendants using the hybrid approach. The MVRA, the Circuit ruled, "permits the Government to hold any individual defendant liable for as much [restitution] as the court ordered as to that defendant, but the government may not collect more from all defendants together then will make the victim whole." 814 F.3d at 261.

### B. Defendant's Arguments Don't Justify a Different Approach Here

This close review of *Sheets* convinces the court that the two restitution orders against Mr. Salti and Mr. Towner adopt a "hybrid approach" to restitution. This is so because, together, they match *Sheets*'s description of that term, *i.e.*, they use "a combination of the apportionment of liability approach while concurrently making all of the defendants jointly and severally liable." 814 F.3d at 260. Given this symmetry and the absence of authority from the Tenth Circuit, the court is inclined to apply *Sheets* here. Trying to persuade the court to reach a different outcome, Mr. Salti makes three principal arguments. None of them carry the day.

*First*, Mr. Salti argues that the "'total amount' of the victim's loss for Mr. Salti is $35,000 not $72,000." Doc. 74 at 5. This argument tries to recast the facts. The Judgment against Mr. Salti explicitly concludes that the lone victim's "Total Loss" was $72,000. Doc. 67 at 5. This conclusion generally comports with the unchallenged finding in Mr. Salti's Presentence Investigation Report. *See* Doc. 64 (sealed) at ¶¶ 25–26 (unchallenged portions of Report estimated victim's loss as $73,000 to $80,000). Mr. Salti didn't object to that portion of the Presentence Report (Doc. 64 (sealed) at ¶ 96), and his Plea Agreement conceded he was responsible for as much as $73,000 of stolen currency (Doc. 58 at 2). Mr. Salti didn't appeal the

court's loss finding or restitution order, and he cites no authority suggesting that he can contest them now.

*Second*, Mr. Salti notes that in "most joint and several restitution cases, two or more codefendants are ordered to pay restitution in the *same* total amount owed to the victim."  Doc. 74 at 5.  On this premise, Mr. Salti opines, the government couldn't object to him receiving a refund if both defendants "were only ordered to pay $35,000 in restitution joint and several with each other[.]"  *Id*.  This is so, defendant contends, because the combined payments by the two defendants would make the victim whole.  *Id*.  This argument isn't faithful to this case's actual facts.  And even using Mr. Salti's hypothetical facts, he would have no basis to object if the government chose to collect the entire $35,000 restitution debt from him and then collect $37,000 from Mr. Towner.

*Last*, Mr. Salti reports that he "disagrees" with "the analysis and reasoning" used in the "out of circuit cases cited by the Government[.]"  Doc. 74 at 6.  But he never provides any reason for his disagreement with *Sheets*.  *See* Doc. 74 at 6.  Instead, he devotes his energy to the First Circuit's decision in *Scott*.  Mr. Salti quotes *Scott* at length, *id*., but his treatment of the case stops too soon.  He omits *Scott*'s operative holding, *i.e.*, that the restitution arrangement there— which parallels the one here—was "within the district court's discretion."  270 F.3d at 53.  Mr. Salti also omits *Scott*'s conclusion that such an arrangement permits the government to "hold any individual defendant liable for as much [restitution] as the court ordered as to that defendant" so long as the government does not "collect more . . . than will make [the victim] whole[.]"  *Id*. at 52–53.

**C. Absent Controlling Authority from the Tenth Circuit, the Court Applies the Holding in *Sheets***

Neither party (nor the FPD) has suggested that the Tenth Circuit has reached the issue presented here. In this circumstance, the court predicts that the Circuit would adopt the holding in *Sheets*. The Fifth Circuit's reasoning in that case is persuasive. The holding conforms to the First Circuit's holding in *Scott*, 270 F.3d 30, and tracks the holding in *Osborne*, 2010 WL 4788169 (W.D. Ky. Nov. 2010) (explaining defendant "must continue to make restitution payments until either [the victim] is compensated in full or his repayments exceed [the total amount of the victim's loss], whichever comes first").

More broadly, construing the restitution order in the fashion advanced by the government serves the purpose of restitution in criminal cases. As our Circuit has explained, criminal restitution is designed "to ensure that victims, to the greatest extent possible, are made whole for their losses." *United States v. Howard*, 887 F.3d 1072, 1076 (10th Cir. 2018).

Here, the court must make a choice. Will Mr. Salti's victim receive the disputed $2,487? Or should the Clerk return it to Mr. Salti because it is an "overpayment?" If Mr. Salti in fact had overpaid his restitution debt—that is, paid more than the $35,000 obligation imposed on him— the court would have no choice. It would order the money returned to Mr. Salti. But that hasn't happened. Mr. Salti cannot plausibly claim he overpaid merely because the Clerk's accounting records booked credits in his favor based on his codefendant's payments. Those credits, no matter how well intentioned, do not justify the repayment sought by Mr. Salti and the Clerk.

Finally, a word or two about the Clerk's predicament in this story. Mr. Breon expressed concern about two ramifications of granting the government's motion. *First*, Mr. Breon credibly testified that the Clerk's treatment of Mr. Towner's payments was faithful to policy directives from the Administration Office of the United States. The court has no doubt that the Clerk

12

endeavored to abide these policies.  But to express the obvious, if these policies conflict with the legal principles adopted by our restitution statutes, they must yield.  *Second*, Mr. Breon expressed concern about the implications that granting the government's motion would have for a broad swath of restitution cases.  Specifically, he worried that this outcome would require the Clerk to recalculate restitution in all multiple defendant cases with unsatisfied restitution obligations.  The court doesn't dare provide advice about the Clerk's accounting records.  But it does note that this motion addresses a peculiar set of restitution facts, *i.e.*, multiple defendants have harmed one victim, and the court has apportioned restitution obligations among the defendants but also applied joint and several liability.

## *Conclusion*

For the reasons explained, the court grants in part and denies in part the government's "Motion . . . for an Order Directing the Application of Restitution Payments" (Doc. 70).  Our court ordered Mr. Salti to pay $35,000 in restitution to the victim of his crime and his payments have not exceeded that amount.  Moreover, given the unchallenged facts in the Presentence Investigation Report, the court would have been well within its discretion to impose a $72,000 restitution debt on him, owed jointly and severally with Mr. Towner.

The court grants the government's request to "apply [Mr.] Salti's August 28, 2020, payment of $7,827.38 to [his] restitution judgment" so that it is now deemed paid in full.  Doc. 70 at 10.  The court also directs the Clerk to disburse the undisbursed amount of that payment to the lone victim of his crime—TZ/JR Enterprises.  The court also grants the government's request deeming Mr. Salti liable for the full amount of his restitution judgment until he has paid that amount in full or the victim's loss is repaid in full, whichever occurs first.  **The court stays the effective date of this Order by 30 days.**

The court denies, however, the government's request that the court:  (1) direct the Clerk how to maintain its accounting records; or (2) rule on any aspect of Mr. Towner's restitution liability.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion for an Order Directing the Application of Restitution Payments (Doc. 70) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 17th day of September, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

14